The Honorable Thomas T. Glover
Chapter 13

Arnold M. Willig
Elizabeth H. Shea
Charles L. Butler, III
HACKER & WILLIG, INC., P.S.
1501 Fourth Avenue, Suite 2150
Seattle, Washington 98101-3225
Tel. (206) 340-1935

Attorneys for Poulsbo Place Condominium Association

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

| In re: | No. 08-13292-TTG |
|---|---|
| BRIAN A. MOLLET and JULIA A. MOLLET, | **DECLARATION OF LEONARD D. FLANAGAN IN SUPPORT OF MOTION TO ABANDON** |
| Debtors. | |

I, Leonard D. Flanagan, upon oath, declare as follows:

1. I am a citizen of the United States of America over eighteen (18) years of age. The statements contained in this declaration are based upon my personal knowledge. I would reaffirm and restate these statements in any proceeding.

2. I am a lawyer with the law firm of Levin & Stein, litigation counsel for the Poulsbo Place Condominium Association (the "Association"), and in this capacity I am familiar with the facts as stated below. I make this declaration in support of the Association's motion for and Order of Abandonment of the interest of the bankruptcy estate of Brian A. and Julia A. Mollet (the "Mollets" or the "Debtors") in any claim against the Debtors' liability insurance carrier which was assigned to the Association during the course of this bankruptcy case.

**DECLARATION OF LEONARD D. FLANAGAN - 1**

HACKER & WILLIG, INC., P.S.
ATTORNEYS AT LAW
1501 Fourth Avenue, Suite 2150
Seattle, Washington 98101-3225
Telephone (206) 340-1935

3. The claim presented herein is a result of certain construction defect litigation. The Association is the condo owners' association for a residential project in Poulsbo, Washington ("Poulsbo Place"). Several years ago, the Association commenced suit against the developer of Poulsbo Place for defective construction. The parties then reached a settlement. Part of the settlement required the developer to assign to the Association its own claims for breach of contract against one of the framing contractors who worked on the project, Brian A. Mollet, dba Mollet Construction. Mr. Mollet improperly framed the majority of the buildings at the project, leading to water intrusion and a need to repair structural shear walls and floor-to-floor connections.

4. On or about February 22, 2008, the Association commenced suit on its assigned claims against Mr. Mollet. He did not respond. Unbeknownst to the Association, on May 29, 2008, the Debtors filed a Chapter 13 case. The Debtors did not list in their bankruptcy schedules and statements the Association's claim against them. On or about March 17, 2009, the Debtors' case was converted to a Chapter 7. However, the Debtor's Chapter 7 bankruptcy schedules and statements again did not list the Association's claim against them.

5. In approximately June of 2008, the Mollets' insurance carrier hired counsel to defend them against the Association's claims. The Debtors' other insurance carrier, American States Insurance Company and its affiliate, Safeco (collectively, "American States"), refused to defend them. The Debtors did not advise their insurance defense counsel of their pending bankruptcy case.

6. The defective construction and breach of contract action proceeded against the Debtors in Kitsap County Superior Court for approximately a year, at which point a compromise and settlement was reached. Just prior to the settlement, the insurance carrier which had hired counsel to defend the Debtors denied coverage and indicated that it would be withdrawing from the defense on the basis of an exclusion in its policy for work done on

DECLARATION OF LEONARD D. FLANAGAN - 2

HACKER & WILLIG, INC., P.S.
ATTORNEYS AT LAW
1501 Fourth Avenue, Suite 2150
Seattle, Washington 98101-3225
Telephone (206) 340-1935

condominium projects. There being no insurance assets available to settle the case, and no indication that the Mollets had significant assets of their own to respond to the claim, the parties entered into a binding settlement agreement pursuant to Civil Rule 2A on June 1, 2009.

7. Under this settlement, the Debtors consented to judgment in favor of the Association in the amount of $1,078,700.00. The Debtors also assigned to the Association all of their potential rights against American States for failure to defend the action. This assignment included claims to the insurance proceeds, claims for punitive damages, claims for attorney fees in prosecuting the insurance coverage and extra-contractual claims, and claims for defense costs incurred to date. The consent judgment was entered on June 11, 2009 in Kitsap County Superior Court.

8. On July 22, 2009, the Mollets received their discharge order. Thereafter, on or about October 21, 2009, Mr. Mollet signed the final version of the settlement agreement and assignment. In November, 2009, the settlement was declared to be reasonable by the Kitsap County Superior Court. This means that if American States is found after litigation to have wrongfully refused to defend, the amount of the judgment could be binding on it.

9. The Association very recently commenced suit on the claims assigned to it against American States. American States contends that it properly refused to defend the Debtor on the basis of a "Multi-Family Housing Exclusion" in its policy, and on the grounds that property damage did not commence at the Project until after its policy period had expired. The Association contends that the insurer's refusal to defend was not reasonable, and that the cited exclusion does not apply.

10. The relevant policy limits are $1 million per occurrence, and $2 million in the aggregate. Accordingly, the core of the Association's claim (the consent judgment) is only slightly over the relevant policy limits. If the Association prevails entirely on its contention that American States should have defended the Mollets, the Association will be entitled to an award

DECLARATION OF LEONARD D. FLANAGAN - 3

HACKER & WILLIG, INC., P.S.
ATTORNEYS AT LAW
1501 Fourth Avenue, Suite 2150
Seattle, Washington 98101-3225
Telephone (206) 340-1935

of attorney fees for that action. If the Association can also show at trial that the refusal to defend was unreasonable and not the product of fraud or collusion, it would be entitled to recover on the consent judgment over and above the $1 million policy limits, to the full amount of the judgment, $1,075,700.00.

11. In addition to the consent judgment and insurance policy proceeds, the Association is seeking an award of punitive damages under the Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015, and the Consumer Protection Act, RCW 19.96, *et seq.* Again, if the Association prevails on this claim at trial, the IFCA could potentially treble the damages award against American States if it is found to have acted in bad faith breach of its obligations, and if the trial court Judge concludes that an award of punitive damages would be appropriate. Assuming the Association prevails on its coverage and bad faith action, issues in connection with an IFCA award would likely include whether an award of punitive damages is appropriate given the presence of the "Multi-Family Housing Exclusion", whether the Association's consent judgment qualifies as "actual damages" under IFCA, and whether an IFCA claim may even be asserted by an assignee.

12. At a preliminary mediation with the American States, the Mollet bankruptcy proceedings came to light and the issue of the potential impact of the bankruptcy on the viability of the claims was raised. However, the Association has reached a settlement with American States for an amount representing coverage under the policy, but which is contingent on an abandonment of this estate's potential interest.

13. I certify under penalty of perjury that the foregoing is true and correct upon information and belief.

DATED this 12 day of April, 2010.

Leonard D. Flanagan, WSBA #20966

DECLARATION OF LEONARD D. FLANAGAN - 4

HACKER & WILLIG, INC., P.S.
ATTORNEYS AT LAW
1501 Fourth Avenue, Suite 2150
Seattle, Washington 98101-3225
Telephone (206) 340-1935